**Frances Sharp LICHTENSTEIN**

v.

**Maurice LICHTENSTEIN**

and

**Darby Farms, Inc.**

**Civ. A. No. 42987.**

United States District Court,
E. D. Pennsylvania.

Sept. 8, 1970.

Lewis Kates, Philadelphia, Pa., for plaintiff.

Jay D. Barsky, Silver & Barsky, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

WOOD, District Judge.

Before us are several motions relating to the implementation of a settlement agreement between the parties. Some consideration of the relevant background of the case is necessary to make clear the issues presented by these motions.

In 1967, this action was instituted by Frances Sharp Lichtenstein naming Darby Farms, Inc., and her then husband Maurice Lichtenstein as defendants. The complaint alleged misuse of the corporate funds by Mr. Lichtenstein in his capacity as the principal officer and director of Darby. Mrs. Lichtenstein requested an accounting and repayment of funds allegedly wrongfully distributed by the corporation to Mr. Lichtenstein.

On December 5, 1968, this Court approved a settlement agreement presented to it by the parties. This agreement, which provided that the instant litigation "shall be marked discontinued and ended upon the terms and provisions thereof contained therein",[1] also purported to settle a similar suit brought by Mrs. Lichtenstein against her husband and Bethayres Estates, Inc. (Civil Action No. 42961). In addition, the agreement constituted a marital property settlement in connection with a divorce action then pending in the state courts.

Pursuant to the settlement agreement, Stanley Merves, a certified public accountant, was retained to audit the books of Darby Farms, Inc. (para. 11(a)). The agreement contained detailed provisions concerning the duties of the accountant, but the primary purpose of the audit was to determine whether there had been any misuse of funds by Mr. Lichtenstein. It was provided with respect to the certified audit that "the determination by said accountant shall be conclusive and binding on all parties." (para. 11(b) (i)). If the accountant were to determine that funds were due Darby, Mr. Lichtenstein agreed to pay a designated escrow agent within 15 days after notice any deficiency between the amount found by the accountant and funds then on deposit with the escrow agent. After the audit was completed and the escrow agent notified him that the deficiency was $36,037.66, Mr. Lichtenstein sought to take exception to the audit, but he never appeared at any appointments arranged for this purpose.

Upon the failure of Mr. Lichtenstein to pay the amount of the deficiency, Mrs. Lichtenstein initiated proceedings to hold him in contempt of the order accompanying the settlement agreement. At the hearing on this issue, Mr. Lichtenstein's counsel contended *inter alia* in attempting to resist a contempt order that before Mr. Lichtenstein could be compelled to pay the assessed deficiency, he had a legal right to take exceptions to the audit. On May 16, 1969, we filed an opinion and order holding Mr. Lichtenstein in contempt and providing further that he could purge himself by satisfying the assessed deficiency by bond or by payment into the registry of the Court. On appeal, the Circuit Court reversed the contempt order on the grounds that the order on which it was based was not definite and specific enough (No. 17915, filed April 2, 1970) and remanded the case to this Court for a further inquiry into Mr. Lichtenstein's contentions with regard to the accountant's audit.

We now have before us the motion of Mrs Lichtenstein for a specific order that Mr. Lichtenstein make payment in accordance with the accountant's certified audit, and the motion of Mr. Lichtenstein that he now be permitted to take exception to certain findings of the accountant. The issue to be resolved in deciding these motions is whether or not under the settlement agreement between the parties, appeals to this Court from the accountant's audit were precluded. In this respect, the agreement provides in relevant part (para. 11):

" * * * (a) Stanley Merves, a Certified Public Accountant shall audit the books and records of Darby at the cost of Lichtenstein (i.e. Mr. Lichtenstein) and render a certified statement covering all receipts, expenditures and disbursements by Darby to the present * * *

"(b) In addition to the transfer to Sharp (i.e. Mrs. Lichtenstein) of 200 shares of the capital stock of Darby,

1. Document 23.

free and clear of all liens and encumbrances, as hereinbefore provided, Lichtenstein shall cause to be paid to Darby an amount of money which, when added to any money Darby shall have in its bank accounts, as of the date of final settlement, equal one-quarter of distributions and expenditures made by Darby up to and including February 29, 1968 and one-third of such distributions and expenditures made thereafter * * * except those expenditures determined by Merves to have been for a proper business purpose. 'Distributions' and expenditures, as used in this sub-paragraph, shall be set forth in a Certified Statement by Merves, as follows:

"(i) He shall aggregate all expenditures of Darby * * * as evidenced by its business records and shall deduct therefrom all repayments and all such, and only such, expenditures which were made for a business purpose of Darby. In that regard he shall have access to all pertinent records which he wishes to see and the principals and accountant of Darby shall cooperate with him so that he can determine whether expenditures were made for a business purpose of Darby. Lichtenstein and Darby shall have the burden of presenting documentation that any or all of said expenditures were for a proper business purpose. *The determination by said accountant shall be conclusive and binding on all parties.*" (Our italics)

There follows a list of specific directions to the accountant)

With regard to this issue, the Circuit Court stated in its opinion, 425 F.2d 1111 fn. 2 at p. 1113 that:

"The settlement agreement * * * also provides that Pennsylvania law should govern the contract.

"Relying on Mussina v. Hertzog, 5 Binney 387 (1812), Mr. Lichtenstein asserts his right to except in the absence of express language limiting that right. The language at issue in Mussina v. Hertzog, *supra,* was 'final and conclusive.' The Supreme Court of Pennsylvania allowed exceptions to be taken from a referee's award.

"In each subsequent case the language construed has contained express averments to the effect that no exceptions or appeals should be taken. This language has consistently been held to preclude exceptions or appeals. See, *e.g.,* McRoberts v. Burns, 371 Pa. 129, 88 A.2d 741 (1952).

"While Mussina v. Hertzog retains vitality, its application, if any, to the case at bar must be subsequent to a resolution of the critical question. Applying Pennsylvania law, that question is whether the parties to the settlement agreement intended that a right to except to the audit was included. See, e.g., Unit Vending Corp. v. Lacas, 410 Pa. 614, 190 A.2d 298 (1936). The inquiry is directed at interpreting the contract language in the light of surrounding circumstances with a view toward the objectives to be accomplished by the contract. Unit Vending Corp. v. Lacas, *supra.*

"It would appear that the rule of Mussina v. Hertzog, *supra,* would only be applicable if such an inquiry should prove fruitless. Since there are insufficient facts of record on this appeal, any attempt at resolving the issue would be inappropriate."

In accordance with the Circuit Court's opinion, and considering the language in question somewhat ambiguous, we ordered a hearing on the issue of whether, under the agreement of settlement between the parties, the provision that the determination of the accountant "shall be binding and conclusive" was intended by the parties to preclude exceptions to the audit of the accountant. After such hearing and after a review of the entire record, we have concluded that the parties intended the language "binding and conclusive" to mean that appeals to this Court from the accountant's certified audit were precluded except in case of alleged fraud and corruption on the part of the accountant.

It is clear both from the record and from the testimony before us that Mr. and Mrs. Lichtenstein were very distrustful of each other and were apprehensive that one or the other would attempt to find a loophole in any settlement agreement if that agreement later turned out to be unfavorable to their interests. (*Cf.* Notes of hearing, p. 12 et seq.) However, it was not possible to settle for a specific sum of money because Mrs. Lichtenstein had no idea how many unjustified disbursements had been made from Darby. It was therefore decided to have an accountant take possession of the appropriate records and determine what, if any, unjustified disbursements had been made from Darby to Mr. Lichtenstein. Mr. Lichtenstein's counsel at that time (he now has different counsel) sought to work out an arrangement whereby final approval of the settlement would be withheld until the accountant finished his audit. Mrs. Lichtenstein's counsel rejected this section emphatically because of his client's fear of the agreement falling through and inserted the provision that the accountant's conclusions would be "binding and conclusive" (See N.T. 16, 22, 37–40, 51 and Ex. P-1). In order to provide further assurance to both parties, the accountant chosen to do the audit was a friend of counsel for both sides. He had done work for one counsel, and had also worked for partners of the other. As counsel for Mrs. Lichtenstein testified (N.T. 13–14):

"So I said to (Mr. Lichtenstein's counsel), 'Here is Mr. Merves. Let him have all the authority. He will take the books and records. He will assume all expenditures to be improper. Your man will have to justify them and his word will be the final word. If we have that, we are out of court. We will get paid. You can rest assured that Stanley Merves won't be dishonest in my favor, and I can rest assured the same with you, because we are both his friends, and we both can trust him.'"

Both parties had full faith in Merves' ability and fairness. Even Mr. Lichtenstein's counsel at the time the settlement agreement was negotiated and drafted stated before us that he was certain that any objections to the audit could be resolved amicably and expeditiously with Merves personally, and he never even considered the possibility of legal exceptions to the certified audit such as Mr. Lichtenstein now seeks to make in this Court. (N.T. 64, 71–2). Therefore at the time of execution of the agreements, it was intended that the accountant chosen would provide a reliable and expeditious resolution of the issues relating to the propriety of prior disbursements from Darby. They intended a final settlement in the near future and a termination of litigation between them, not an accountant's report which would serve as a prelude to protracted appeals on the issues involved in the litigation.

It is true that the agreement is unevenly drafted. This is undoubtedly due to the fact that, as they recognized at the time, counsel for the parties had completely different styles of drafting, and that they had to conclude drafting of the agreement in a hurry. (See e.g. Ex. P-1). However, there is ample evidence on the face of the agreement that the matter was to be rapidly concluded and that protracted appeals to the accountant's audit were not contemplated. For instance, the order of settlement provides that the settlement agreement is "in full and final settlement and in release of any and all claims" and "is approved as an order of this Court and this litigation should be marked discontinued and ended." (Document 23) Moreover, one of the prefatory clauses of the agreement averred that "(WHEREAS) Sharp, Lichtenstein, and Darby desire amicably to *settle, discontinue and end said litigation* * * * upon certain terms and conditions" (Agreement, page 2, Italics ours). In addition, paragraph 13, which provides for an escrow agent to hold certain funds and distribute them upon presentation

of proof of a final divorce between Mr. and Mrs. Lichtenstein (within 60 days of execution of the settlement agreement), obviously contemplates an expeditious payment to Darby (para. 13 (a) (iii)) and not a lengthy intervening period where exceptions were taken and appealed thereby forestalling the time when Mr. Lichtenstein had to pay any deficiency due. Clearly under all these circumstances, the provision of paragraph 11(b) (i) that "the determination by said accountant shall be conclusive and binding on all parties" meant that no appeals or exceptions could be taken from the certified audit absent alleged corruption on the part of the accountant.

Present counsel for Mr. Lichtenstein, however, contends that the word "determination" in the last sentence of paragraph 11(b) (i) (previously quoted) refers back to the word "determine" two sentences before and that therefore the only determination by the accountant which was intended to be "conclusive and binding" was the determination of whether or not certain expenditures were made by Darby for a business purpose. We cannot agree. In the context of the agreement, we see no good reason to distinguish for purposes of finality between the accountant's determinations of whether disbursements were for a business purpose or not, and his other determinations. Many of his decisions in compiling the audit required the same professional judgment employed in determining business purpose; all had a significant bearing on the amount of the deficiency which might ultimately be assessed against Mr. Lichtenstein; all may functionally be classified as determinations. In fact, in paragraph 10(a) the agreement directs the auditor to "determine" another matter not related to business purpose. Moreover, as previously stated, it is simply not plausible that the parties in drafting a settlement agreement under these circumstances would attempt to expedite and simplify matters by making the accountant's determinations as to business purpose final and not subject to appeal, while leaving the others subject to several years of lengthy and difficult appeal. We think that rather than just referring to one sentence of paragraph 11(b) (i), the last sentence of that paragraph (providing that the accountant's determinations were to be "binding and conclusive") related to the whole paragraph and the aggregation of expenditures of Darby and the certified statement which that paragraph directed him to prepare.[2]

We therefore conclude that "in the light of surrounding circumstances with a view toward the objectives to be accomplished by the settlement agreement"[3] the parties here intended the last sentence of paragraph 11(b) (i) to preclude appeals and exceptions such as we have before us from the accountant's audit. Accordingly, we will direct that

2. Mr. Lichtenstein also contends that further evidence of the asserted intent of the agreement to provide that the accountant's decisions were to be binding and conclusive only as to determinations relating to business purpose is that the "binding and conclusive" phrase is found only in paragraph 11(b) (i), while subsequent provisions, i. e. ¶¶ 11(b) (ii) through 11(b) (v) have no "binding and conclusive" phrase. We cannot agree here either. First, paragraph (i) is general and refers to the whole aggregation that the accountant is to make whereas paragraphs (ii) through (v) provide special directions to the accountant with regard to specific computations. Therefore, for reasons previously stated, paragraph (i) set out a general outline and provided a general rule that the determinations of the accountant would not be subject to appeal. Secondly, we think that the parties intended that the accountant Merves have the same duties and his conclusions the same finality in the case of Darby as in the case of Bethayres; and in the section delineating Merves' duties with respect to Bethayres, all those duties, including specific instructions, are contained in a single paragraph (10(b)). At the end of that paragraph, it is provided that, as in the case of Darby, "the determination by said accountant shall be conclusive and binding on all parties."

3. The inquiry which the Circuit Court directed us to make. *supra.*

counsel for Mrs. Lichtenstein submit an order compelling Mr. Lichtenstein to pay those sums which the settlement agreement obliges him to pay once the accountant has submitted his final certified audit.